**UNITED STATES DISTRICT COURT**
**FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

FILED

2017 MAY 24  PM 4: 36

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY CLERK

| | |
|---|---|
| HARMONY K. STANDARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **CIVIL ACTION NO.** |
| VS. ) | **SA-17-CA-0155-FB (HJB)** |
| ) | **JURY TRIAL DEMANDED** |
| ADVENTIST HEALTH SYSTEM/ SUNBELT ) | |
| INC; also METROPLEX ADVENTIST ) | |
| HOSPITAL INC; also d/b/a METROPLEX ) | |
| HEALTH SYSTEM; also d/b/a METROPLEX ) | |
| HOSPITAL; also d/b/a ROLLINS BROOK ) | |
| COMMUNITY HOSPITAL; also ) | |
| METROPLEX HEALTH SYSTEM-HR; also ) | |
| BRENDA COLEY, Individually and as former ) | |
| Human Resources Executive Director for ) | |
| Metroplex Health Systems-HR; also TINA ) | |
| AL-HOMMOUD, Individually and as Human ) | |
| Resources Assistant and Benefits Coordinator ) | |
| For Metroplex Health System-HR; also RAY ) | |
| OWENS, Individually and as Rehabilitation ) | |
| Director for Metroplex Health System; also ) | |
| CARLYLE WALTON, Individually and as ) | |
| President and CEO of Metroplex Health ) | |
| System; also ASHLEY UNDERWOOD, RN, ) | |
| Individually and as Administrator of Rollins ) | |
| Brook Community Hospital; also TAMMY ) | |
| RODRIGUEZ, RN, Individually and as Vice ) | |
| President of Patient Services and Chief ) | |
| Nursing Officer for Metroplex Health System, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

1

## I. NATURE OF THE ACTION

1.     This action is brought under Whistleblower Protection Provisions of the False

Claims Act, 31 U.S.C. § 3730(h); to provide relief to Plaintiff Harmony K. Standard

("Standard") from retaliatory conduct of Defendants Adventist Health System / Sunbelt

Inc. ("AHS"), also Metroplex Adventist Hospital, Inc. ("MAHI"), also Metroplex Health

System ("MHS"), also Metroplex Hospital ("MH"), also Rollins Brook Community

Hospital ("RBCH"), also Metroplex Health System-HR ("MHS-HR"), also Brenda Coley

("Coley"), also Tina Al-Hommoud ("Hommoud"), also Ray Owens ("Owens"), also

Carlyle Walton ("Walton"), also Ashley Underwood ("Underwood"), also Tammy

Rodriguez ("Rodriguez"), "Defendants" who unlawfully discriminated against Standard

on the basis of lawful acts of protective activity done in furtherance of an action to stop 1

or more violations of the False Claims Act (FCA), [31 U.S.C.§§3721 et.seq] and religious

ethical beliefs and wrongfully terminating for refusal to participate in a Medicare scheme

and for previous protective conduct in violation of Whistleblower Protection Provisions of

the False Claims Act, 31 U.S.C. § 3730(h).

## II. JURISDICTION AND VENUE

2.     This Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331 and

1332, and pursuant to 31 U.S.C. § 3730(h) (2). This Court has personal jurisdiction over

Defendants pursuant to 31 U.S.C. § 3732(a), and registered agent for service of process

Sylvia R. Adams, Esq. Associate Chief Legal Officer located at AHS headquarters 900

Hope Way, Altamonte Springs, Florida. Plaintiff Standard is an "original source" of this

information within the meaning of the False Claims Act and is expressly excepted from its public disclosure bar. As the unlawful employment practices complained of herein occurred with the Western District of Texas, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3730 (h) (2).

### III. PARTIES AND ENTITIES

3.     Plaintiff Harmony K. Standard ("Plaintiff" "Standard") is a resident of Helotes, Texas. She is a Christian; a Texas licensed Occupational Therapist, with Bachelor of Science in Occupational Therapy from Loma Linda University, a Seventh-day Adventist educational institution, and with over 25 years of experience providing Occupational Therapy services, and was employed by Metroplex Adventist Hospital, Inc. as Inpatient Occupational Therapist of Metroplex Hospital from October 12, 2015 until January 18, 2016.

4.     The address at which Plaintiff sought and was employed by the Defendants was Metroplex Adventist Hospital, Inc., d/b/a Metroplex Hospital located at 2201 Clear Creek Rd, Killeen, Texas. Employer and supervisors used company transfer policy to employ Plaintiff at a second location, Rollins Brook Community Hospital located at 608 N Key Ave, Lampasas, TX.

5.     Defendant Adventist Health System/ Sunbelt, Inc. ("AHS") is, upon information and belief, a non-profit corporation headquartered at 900 Hope Way, Altamonte Springs, Florida. This Fortune 500 organization is operated by the Seventh-day Adventist church

3

and is a nationwide provider of healthcare services. AHS has member affiliates Metroplex Adventist Hospital, Inc., d/b/a Metroplex Health System, also d/b/a Metroplex Hospital, and also d/b/a Rollins Brook Community Hospital in Texas. Contact is Sylvia R. Adams, Esq. Associate Chief Legal Officer for AHS.

6.       Defendant Metroplex Adventist Hospital, Inc. ("MAHI") is, upon information and belief, a Texas non-profit healthcare corporation headquartered at 2201 Clear Creek Rd, Killeen, Texas in this District. MAH is registered with the Secretary of the State of Texas d/b/a Metroplex Health System, also d/b/a Metroplex Hospital, also d/b/a Rollins Brook Community Hospital. Contact is Carlyle Walton. [1] [2]

7.       Defendant Metroplex Health System ("MHS") is, upon knowledge and belief, a Texas non-profit healthcare organization of hospitals, medical clinics, group practices and offices providing healthcare services headquartered at 2201 Clear Creek Rd, Killeen, Texas in this District. Contact is Carlyle Walton.

8.       Defendant Metroplex Hospital ("MH") is, upon knowledge and belief, a non-profit acute care hospital providing healthcare services headquartered at 2201 Clear Creek Rd, Killeen, Texas in this District.

9.       Defendant Rollins Brook Community Hospital ("RBCH") is, upon knowledge and belief, a non-profit critical access hospital providing healthcare services including wound care and rehabilitation services headquartered at 608 N Key Ave, Lampasas, Texas in this District.

10.     Defendant Metroplex Health System-HR ("MHS-HR") is a department within MHS responsible for implementing and/or overseeing policies governing employee behavior and the behavior of the company toward its employees headquartered at Metroplex Hospital, 2201 Clear Creek Rd, Killeen, Texas in this District. MHS-HR contact is Joshua Champion.

11.     Defendant Brenda Coley ("Coley"), upon information and belief, resides at 4340 Lago Vista Dr., Belton, TX, Bell County. At all relevant times, Coley had been employed by Metroplex Adventist Hospital, Inc., as former Executive Director Human Resources of MHS-HR for nearly 25 years. Coley reported directly to Carlyle Walton.

12.     Coley is former Executive Director for Central Texas Workforce Solutions, a division of Texas Workforce Commission. As Plaintiff Standard's supervisor during most of her employment at Metroplex Adventist Hospital, Inc., Coley had the power to make personnel decisions regarding Plaintiff's employment.

13.     Defendant Tina Al-Hommoud ("Al-Hommoud"), upon knowledge and belief, can be located at Metroplex Hospital, 2201 Clear Creek Rd, Killeen, Texas. At all times relevant herein, Al-Hommoud has been employed by Metroplex Adventist Hospital, Inc. as Human Resources Assistant and Benefits Coordination of MHS-HR, and reported directly to Coley. Al-Hommoud is knowledgeable of AHS employee handbook policies, payroll, taxes and health benefits. As Plaintiff Standard's supervisor during most of her employment at Metroplex Adventist Hospital, Inc., Al-Hommoud had the power to make personnel decisions regarding Plaintiff's employment.

14.     Defendant Ray Owens ("Owens"), upon knowledge and belief, can be located at Metroplex Rehabilitation Center, 2300 Clear Creek Rd, Killeen, Texas. At all relevant times, Owens has been employed by Metroplex Adventist Hospital, Inc. as Rehabilitation Director of MHS. Owens reports to Robert Brock VP/CFO and Rodriguez and Coley and Walton. Owens is an off-site manager for MH and RBCH and is responsible for billing and staffing rehabilitation services at Metroplex Rehabilitation Center and Metroplex Hospital, and RBCH outpatient and inpatient services and RBCH Rehabilitation Center.

15.     As Plaintiff Standard's supervisor during most of her employment at Metroplex Adventist Hospital, Inc., Owens had the power to make personnel decisions regarding Plaintiff's employment.

16.     Defendant Carlyle Walton ("Walton") is, upon knowledge and belief, is located at 2103 Addax Trail, Harker Heights, Texas, 76548 and Metroplex Hospital, 2201 Clear Creek Rd, Killeen, Texas. At all times relevant herein, Walton has been employed by Metroplex Adventist Hospital, Inc., most recently as President and CEO of Metroplex Health System. As Plaintiff Standard's supervisor during most of her employment at Metroplex Adventist Hospital, Inc., Walton had the power to make personnel decisions regarding Plaintiff's employment. Walton is Executive Director and Treasurer for Central Texas Workforce Solutions, a division of TWC. [3]

17.     Defendant Ashley Underwood, RN ("Underwood") is, upon knowledge and belief, located at RBCH, 608 N Key Ave, Lampasas, Texas. At all relevant times, Underwood has been employed by Metroplex Adventist Hospital, Inc., most recently as Administrator

of RBCH in Lampasas, Texas. Underwood reports directly to Walton. Underwood knew

plans for RBCH Rehabilitation Center. As Plaintiff Standard's supervisor during most of

her employment at Metroplex Adventist Hospital, Inc., Underwood had the power to

make personnel decisions regarding Plaintiff's employment.

18.     Defendant Tammy Rodriguez, RN ("Rodriguez") is, upon knowledge and belief,

located at Metroplex Hospital, 2201 Clear Creek Rd, Killeen, Texas. At all relevant times,

Rodriguez has been employed by Metroplex Adventist Hospital, Inc., most recently as

Vice President of Patient Services and Chief Nursing Officer for MHS. Rodriguez reports

directly to Carlyle Walton. As Plaintiff Standard's supervisor during most of her

employment at Metroplex Adventist Hospital, Inc., Rodriguez had the power to make

personnel decisions regarding Plaintiff's employment.

## THE ELEMENTS OF A 3730(H) ACTION

Courts look to the following elements in a section 3730(h) action:

(1)     was the whistleblower's conduct protected under the False Claims Act;
(2)     Was the defendant aware of the protected conduct; and
(3)     Was the discrimination due to the protected conduct?

See United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 235
(1st Cir. 2004); McKenzie v. BellSouth Telecommunications, Inc., 219 F.3d 508 (6th Cir.
2000).

## IV. ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

19.     The hospital wanted scores and accreditation and revenue.

20.     During the interview and hiring process August 2015 and September 2015,

Owens and Coley did not discuss anticipated hospital surveys which occurred from

October 2015 thru January 2016 for patient safety (Jumpfrog) and Joint Commission

hospital accreditation (Gold Seal). [4] [5]

21.     During the interview Owens said the hospital had been without Occupational

Therapy services "for a very long time" and said "do anything you want."

22.     He said he never fired anyone before but made circumstances so miserable for

another Occupational Therapist that she had no option but to quit.

23.     Owens gave a verbal offer and Coley sent a written offer of employment to

Standard for the position of Inpatient Occupational Therapist Rehabilitation Department

for Metroplex Hospital in Killeen, Texas, and did not disclose staffing needs for RBCH

Rehabilitation Center. [6] [7]

24.     Owens and Coley did not disclose the transfer policy in the employee handout

when offering Plaintiff the position. Owens and Coley knew her signature was required

on the employee handout acknowledgment and knew they could use her employment

status and credentials to fulfill requirements for Human Resources personnel files and

hospital requirements for Medicare accreditation.  Plaintiff did not understand her

signature would alter the original terms and conditions of her employment to cover a

second location at RBCH. [8] [9]

25.     Owens told Standard to drive the back road from San Antonio through Blanco to Lampasas on Hwy 281 instead of San Antonio through Austin to Round Rock to Killeen on I35. Owens wanted to know if she was selling her house to move to Killeen, Texas and knew she needed this job to pay property taxes. Owens encouraged Standard to enroll in the Adventist Retirement Fund with matching 14% payroll deductions and said he was planning to stay at his position until he retires in another 15 years. Owens said he wanted "program development."

26.     Standard researched the company prior to beginning employment with Adventist Health System and discovered the September 21, 2015 internet posting "Adventist Health System to pay $118.7 million settlement over Stark, False Claims allegations" [10]

27.     October 12, 2015, at orientation Walton asked if anyone could explain where the hospital mission "Extending the healing ministry of Christ" came from. [11]

28.     No one answered because only three percent of 1200 employees at Metroplex Health System are Seventh-day Adventists. (3% of 1200 = 46 employees)

29.     After Walton's presentation Plaintiff showed him the September 21, 2015 internet posting "Adventist Health System to pay $118.7 million settlement over Stark, False Claims allegations" and asked him, "Can you explain this?" Walton responded, "We blew it, we R-E-A-L-L-Y blew it."

30.     The first week Plaintiff's e-mails were set up for Administrative emails. She received Walton's e-mail saying, "Hey guys, another one (Qui Tam). This time wound

9

care. She showed Owens the e-mail. He told her, "I want you to send ME this email and then delete it." She did not send Owens the attorney privileged e-mail.

31.    The e-mail account was changed. Owens set up weekly one-on-one meetings.

32.    He said, "I want you to tell me everyone you talk to and everything you say."

33.    Within the first month the RBCH physician began submitting orders for OT.

34.    On or around December 3, 2016 Standard engaged in protected activity.

### (1) PROTECTED ACTIVITY

35.    This is a complaint of hospital improper billing for unnecessary medical services, and misuse of Medicare funding, and collusion between wife of Patient #1 and RBCH.

36.    This is a complaint of Medicare health care fraud in violation of 31 USCS §§ 3721 et seq. of the False Claims Act, 31 U.S.C §§ 3729(a)(1)(A), (a)(1)(B), (a)(1)(C), and (a)(1)(G).

37.    This is a complaint against Metroplex Adventist Hospital, Inc., NPI 1750392916, D/B/A Rollins Brook Community Hospital (RBCH), EIN 742613706, and Address: 608 N Key Ave Lampasas, TX 76550.

38.    The program is Medicare, Patient #1, in RBCH Swing Bed program.

39.    RBCH employees who "knowing" and "knowingly" include Administrator Ashley Underwood, RN; and Molly Peterson, RN, Insurance billing liaison for RBCH; and Kara Kehoe, Physician Assistant for RBCH; and RBCH supervising Physicians.

40.     The allegations occurred while Patient #1 was admitted Swing Bed status at

RBCH. Patient #1 had diagnosis stroke and terminal stomach cancer. Patient #1 received

physical therapy, occupational therapy, speech therapy, and skilled nursing services for

N-G tube feeding.

41.     Plaintiff Standard's relationship to Patient #1 is former Occupational Therapist of

Metroplex Hospital in Killeen, TX providing occupational therapy services to Patient #1

at Rollins Brook Community Hospital in Lampasas, TX.

42.     Medicare therapy regulations, 42 CFR § 409.44(c) (2) (i) (B) requirements,

  (c)Physical therapy, speech-language pathology services, and occupational therapy,
     (2)(i) (B) At least every 30 calendar days a qualified therapist (instead of an
     assistant) must provide the needed therapy service and functionally reassess
     the patient in accordance with § 409.44(c)(2)(i)(A).

43.     Standard followed Medicare guidelines attempted to reassess Patient #1.

44.     No other witnesses were present on or around December 3, 2015 when Standard

asked the wife of Patient #1 (room 218) if she was taking her husband home. Patient #1's

wife responded, *"Medicare pays 90 days as long as I keep telling them he needs it."*

45.     Patient1's wife stated she could not (tube) feed him and said, "Well, I guess

Hospice could." Patient #1 was TOTAL assist in personal self-care including dressing

and bathing and incontinent toileting and N-G tube for feeding.

46.     Wife said she did not want to take him home. Patient #1 was making gains in

ambulation and cognition and RBCH used Ativan, (Lorazepam), as a chemical restraint

to maintain and limit his physical activity.

11

47.     Patient #1 was so sedated during OT sessions the caregiver would have to shout, "X! X! Wake up! Do what the lady says."

48.     During therapy sessions caregiver and Patient #1's wife would discuss the sale of 200 head of cattle, $10K hay, etc. Standard was told by hospital staff that Patient #1's wife purchased the physician assistant's house and she moved into town.

49.     Standard looked for Molly Peterson, RN, the Medicare insurance billing liaison for RBCH, but could not find her. Instead, she found Ruth RN and explained while she was completing a monthly therapy assessment for Medicare she asked about discharge plans for Patient #1 when the wife responded, *"Medicare pays 90 days as long as I keep telling them he needs it."*

50.     She told Ruth RN she thought that the wife and hospital were both misusing Medicare funds. Standard explained the Adventist Health System was previously visited by the DOJ for alleged $115 Million False Claims and suggested Ruth RN look up this up on her computer.  Ruth RN declined. Ruth RN opened her computer and said "Well you ought to see this guy! The nurse called Safe Harbor before calling the doctor to say, 'I'll open the drawer (meds) but you (doctor) give it (narcotic) to him.'" [12]

### (2) KNOWLEDGE OF ACTIVITY

51.     The next day Ruth RN told Molly Peterson, RN about Standard's complaint, and Molly Peterson, RN told Kara Kehoe, Physician Assistant, who told Underwood, RN, Administrator of RBCH, who called Owens and complained about Standard's "behavior."

52.     Plaintiff told Owens Patient #1 was being exploited for his Medicare benefits by the hospital and the wife by keeping him in the hospital rather than home on hospice.

53.     She told him Patient #1 was chemically restrained to limit activity and got physical therapy in the mornings when he was alert. She explained Patient #1 was TOTAL assist for self-care provided by caregiver and not a good candidate for rehab.

54.     She told Owens she felt uncomfortable making visits to RBCH to say patients needed her services when patients refused or were unresponsive.

55.     Standard said she felt the hospital was using her license and that in her opinion, this Christian (Seventh-day Adventist) hospital should not have been engaging in less than ethical activities. The Bible says, "Thou shalt not steal," and "Thou shalt not bear false witness."

56.     Owen said he was going to RBCH the next day to investigate and talk with Patient#1's wife and RBCH staff but he first wanted to hear Standard's side of the story.

57.     Owens came back saying Patient #1's wife went home and "cried all day" and the Physician Assistant felt Standard was telling her "how to practice medicine" and RBCH staff said Standard was "judgmental."

58.     The AHS employee handout Whistleblower policy (page 12) states, "Supervisors and department directors are required to report suspected violations of AHS's code of ethics to the Regional Corporate Responsibility Officer." [8]

59.     Patient #1 was removed from Standard's caseload for OT services.

13

60.     Standard saw the Speech Therapist and asked if she was seeing Patient #1 and she answered, "No. The doctors decided he wasn't doing as well as they thought he was."

61.     On December 16, 2015 Standard went into a patient's room having the medical order "NPO", nothing by mouth, and patient was in bed self-feeding using his non-affected left hand. The patient's daughter said he fed himself the night before. Standard had reviewed his chart which said he was scheduled for a swallow study. She notified the 4th floor nurse manager to show the communication board did not indicate the NPO status. She told this manager the doctor ordered "out of bed activities" due to the nature of his medical condition. The communication board said "bed rest." This nurse manager saw Standard snap a picture of the board with her phone. Standard was not aware this nurse manager contacted her supervisor Owens. Hospital surveyors were in the hospital at the time and the hospital wanted good scores for patient safety.

### (3) DISCRIMATORY RETALIATION
### (Harassment – PIP)

62.     The next day, December 17, 2015, Standard received an unwarranted negative evaluation called the PIP, performance improvement plan after her protected activity at RBCH and report of public policy relating to patient care. [13]

63.     Owens documented in the PIP that during the past two months, five hospital employees and one physician assistant expressed concerns about Standard's interactions with them. He made direct reference to the Nurse Manager from the previous day and

14

without acknowledging the patient safety and non-compliance issues Standard identified, instead made false accusations that Standard spoke inappropriately in front of family.

64.     He referenced hospital employees and physician assistant at RBCH describing Standard's interaction with them as "demanding" "impatient" "to personal" "intrusive" "lack of boundaries" "rude" "defensive" "not listening" "judgmental" and "insensitive."

65.     Coley wanted Standard's signature and she said, "I need counsel. This is a lie." Coley said, "It's in effect whether you like it or not. A third of all are people on it. (MHS has 1200 employees; 1/3 of 1200 = 400 employees on a PIP)

66.     In contrast, during this same month, Standard received five SHARE positive reviews from patients she treated at Metroplex Hospital. Owens personally received them from patients. These five complimentary reviews were recorded and published in the company e-mail January 2016. Rita from Patient Services is the contact person. [14]

67.     Owens did not provide Standard a 90-day new-hire job performance review like other therapists received. The Outpatient Occupational Therapist hired one month before Standard got her 90-day review. The Physical Therapist hired three months before Standard got his 90-day evaluation.

### (3) DISCRIMATORY RETALIATION
### (Harassment – Weekly Meetings)

68.     Owens' weekly one-on-one meetings occurred every Thursday 3:30 PM after the male physical therapists vacated the room to go home. He always started the conversation saying something positive and continued finding fault in Standard's behavior. After one

session Owens conduct was so offensive Standard clocked out and went to Starbucks for 1 ½ hours in a non confrontational environment to recompose emotionally in order to function properly at work to evaluate new patients and document results in the computer before going home to San Antonio. Owens became so hostile Plaintiff asked for a witness from Human Resources. After 3 or 4 times with HR Owens told Standard that she could not work here anymore and would have to resign if she needed HR as witness whenever he wanted to talk with her and presented Standard with a resignation form. [15]

### (3) DISCRIMATORY RETALIATION
### (Harassment – Medicare Scheme)

69.     Standard alleges that supervisor Underwood subjected her to harassment January 13, 2016 when Owens told Standard to return to RBCH. Underwood wanted to talk with her walked her into a hallway to stand in a doorway near a woman seated at a computer who documented the conversation. Underwood wanted "increased therapy minutes" and "increased therapy presence" for hospital Medicare Swing Bed accreditation. She used the phrase "in your heart of hearts" asking for Standard's willingness to in participate in a Medicare scheme to certify patients for occupational therapy at RBCH after the patient's 3 overnight stays at Metroplex Hospital and knowing Medicare pays 100% the first 20 days and pays 80% for 90-100 days total. The government calls this kind of knowingly and willingness healthcare fraud, 18 U.S. Code § 1347.

18 U.S.C. § 1347 Health care fraud
(a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—

(1)    To defraud any health care benefit program; or

(2)    To obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, …

 (b)    With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.

### (3) DISCRIMATORY RETALIATION
(Harassment – Medicare Scheme – Pretext)

70.    Standard alleges that supervisors Owens and Rodriguez subjected her to

harassment on January 14, 2016 after Owens told Standard to meet him in Rodriguez

office. She watched Owens enter the room and look directly at Rodriguez while he

slipped a tape recorder inside the upper right pocket of his jacket. Rodriguez began the

meeting as if it was a legal deposition. She announced the day and time and identified all

people present and talked about Standard working at RBCH. She used the same phrase

"in your heart of hearts" as Underwood and implied the same condition of employment.

Standard did not feel comfortable after her unwarranted negative evaluation and previous

protective activity at RBCH, and believed this significant change in employment status

would mean termination if she did not accept. Rodriguez told Owens to continue the

weekly meetings. [16]

### (3) DISCRIMATORY RETALIATION
(Quid Pro Quo harassment and termination)

71.    January 18, 2016 Owens asked Standard if she had gone to RBCH and she said

"no."  She told him she checked on the computer at Metroplex Hospital and saw two

patients at RBCH and there were no physician orders for OT services. Owens told her to meet him at Human Resources. Owens did not speak and sat holding two manila folders against his chest and stared at Standard. Owens had Al-Hommoud, the HR Assistant and benefits coordinator, tell Standard she could do one of three things: (1) go to RBCH and "sit there" (we will pay you), or (2) resign, or (3) be terminated.

72.     Standard was told that her compensation and terms and conditions of employment was dependent upon her going to RBCH like a social prostitute and use her therapy license to pick up and certify patients and bill patient's Medicare for hospital revenue. A-Hommoud and Owens' Quid Pro Quo harassment of expressly and implied condition of employment for Standard was refused by Standard and she was terminated. Walton knew of Standard's termination because he issued her a check for $1,301.44 including unjustified mileage reimbursement making the claim she visited RBCH twice weekly over three months. [17]

## (3) DISCRIMATORY RETALIATION
### (Denial of Benefits)

73.     March 20, 2016 the TWC Ombudsman Francis Brown assisted Standard with an UI claim against Metroplex Hospital to get documents. TWC determination denied Standard UI benefits based on Misconduct. May 10, 2016 TWC telephone hearing and Al-Hommoud was present but Owens and Coley did not speak to have their responses recorded under oath. [18] [19]

74.     On July 29, 2016, Standard filed a complaint with US Dept HHS OIG Hotline Operations to provide new evidence for Re-hearing with TWC Appeal for UI benefit

decision. On May 9, 2017the US Dept HHS OIG responded to Standard's FOIA request. [20] [21]

75.     January 2016 the health insurance costing $39 / paycheck cancelled and she received a letter saying continued health benefits under COBRA cost $628.71 per month. Standard was and remains unable to pay for health insurance.  Plaintiff was and remains unable to afford health insurance. During the months of August through November 2016 she had ringworm on her arms and legs and face and was unable to afford to get treatment from a Physician, so instead she used Clorox and Vasoline on her skin until her body healed itself. [22]

### (3) DISCRIMATORY RETALIATION
(Blacklisting)

76.     Defendants statements "insubordination" and "misconduct" describing Plaintiff's reason of separation Metroplex Adventist Hospital, Inc. are false and untruthful, and Defendants disseminated this information to Texas Workforce Commission with the knowledge the agency would rely on the information as a permanent employment record for Plaintiff.  These statements are shared with third party entity Equifax Workforce Solutions and specialty consumer reporting entity the Work Number Database and with employers on background checks and job applications through HR software programs taleo and Oracle and TALX used with Indeed.com and other job sites and sharing this untruthful information harms Standard's opportunity for gainful employment in the field of Occupational Therapy.

19

77.     Defendants statements were submitted with malice, willfulness, and reckless

indifference to harm Plaintiff Standard's reputation and employment opportunities.

78.     Due to the retaliatory conduct of Defendants, Defendants have caused her to

forfeit a 30 year career as an Occupational Therapist.

### (3) DISCRIMATORY RETALIATION
### (Violation of AHS Whistleblower Policy)

79.     The Adventist Health System / Metroplex Health System operated by the Seventh-

day Adventist church failed to follow their Whistleblower policy documented on page 12

of the employee handbook and Compliance Program related to the federal False Claims

Act (FCA) on pages 46-47, due to the retaliatory conduct of Defendants. [8]

### WHISTLEBLOWER.

"No employee who in good faith reports a violation of AHS code of ethics
shall suffer harassment, retaliation or adverse employment consequence.
An employee who retaliates against an individual who has reported a
violation in good faith is subject to discipline, up to and including
termination of employment. This whistleblower policy is intended to
encourage and enable employees and others to raise serious concerns with
the AHS prior to seeking resolution outside AHS.

AHS has an open door policy and encourages employees to share their
questions, concerns, suggestions or complaints with a supervisor who can
address them properly. In most cases, an employee's supervisor is in the
best position to address the employee's questions, concerns, suggestions or
complaints…

Adventist Health System employees who report false claims or other
fraudulent activity or misconduct or otherwise assist in an investigation,
proceeding or testify are protected from retaliation under state and federal
laws and AHS policies.

80.     Plaintiff has personal and financial harm from Defendants retaliatory conduct in violation of Whistleblower Protection Provisions of FCA, 31 U.S.C. § 3730(h).

### (3) DISCRIMATORY RETALIATION
### (Post Retaliation – Special Damages)

81.     Plaintiff states Defendants post-retaliatory acts of discrimination are ongoing.

82.     During her employment October 12, 2015 until January 18, 2016 with Metroplex Adventist Hospital, Inc. Standard was financially able to establish a property tax payment plan with the county tax assessor and paid $10,500 in four months toward delinquent taxes. As a direct result of Defendants discrimination and retaliatory conduct, she was unable to continue making payments and the property tax payment plan defaulted and is required to establish a payment plan with the county tax assessor to prevent loss of her home from foreclosure sheriff sale. [25]

### V.
### FIRST CAUSE OF ACTION

83.     Standard realleges paragraph 1 through 82 above.

84.     By the conduct of AHS and MAHI and MHS and MH and RBCH and MHS-HR and Coley and Al-Hommoud and Owens and Walton and Underwood and Rodriguez, described above, Defendants have wrongfully discriminated against Standard in the terms, conditions and privileges of her employment on the basis of religious ethical beliefs and refusal to engage in Medicare schemes and lawful acts of protected activity in violation of the Whistleblower Protection Provisions of the FCA, 31 U.S.C. § 3730(h).

85.     Standard has been damaged by the defendants' wrongful conduct and is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this Court grants relief. As a result of the acts of discrimination, Standard suffered emotional harm and harm to her reputation.

86.     Defendants' acts of discrimination were performed with malice, willfulness, and reckless indifference to Standard's civil rights.

## VI.
## SECOND CAUSE OF ACTION

87.     Standard realleges paragraphs 1 through 86 above.

88.     By the conduct of AHS and MAHI and MHS and MH and RBCH and MHS-HR and Coley and Al-Hommoud and Owens and Walton and Underwood and Rodriguez, described above, Defendants have wrongfully retaliated against Standard on the basis of religious ethical beliefs and refusal to engage in Medicare schemes and lawful acts of protected activity in violation of the Whistleblower Protection Provisions of the FCA, 31 U.S.C. § 3730(h).

89.     Standard has been damaged by the defendants' wrongful conduct and is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory practices unless and until this Court grants relief.

90.     As a result of the acts of retaliation, Standard suffered emotional harm and harm to her reputation.

91.    Defendants acts of retaliation were performed with malice, willfulness, and reckless indifference to Standard's civil rights.

## VII.
## THIRD CAUSE OF ACTION

92.    Standard realleges paragraphs 1 through 91 above.

93.    By the conduct of AHS and MAHI and MHS and MH and RBCH and MHS-HR and Coley and Al-Hommoud and Owens and Walton and Underwood and Rodriguez, described above, Defendants, the former employer and supervisors of Standard, who as an employee subject to the provisions of the Whistleblower Protection Provisions of the FCA, 31 U.S.C. § 3730(h), did, during the period of Standard's employment, repeatedly and willfully violate the Whistleblower Protection Provisions of the FCA, 31 U.S.C. § 3730(h), discriminating between employees on the basis of religious ethical beliefs and refusal to engage in Medicare schemes and for lawful acts of previous protective activity, and which were performed under similar working conditions.

94.    Standard has been damaged by the defendants' wrongful conduct and is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory practices unless and until this Court grants relief. As a result of the acts of discrimination, Plaintiff suffered emotional harm and harm to her reputation.

95.    Defendants' acts of discrimination were performed with malice, willfulness, and reckless indifference to Standard's civil rights.

23

## VIII.
## FOURTH CAUSE OF ACTION

96.     Standard realleges paragraphs 1 through 95 above.

97.     By the conduct of AHS and MAHI and MHS and MH and RBCH and MHS-HR and Coley and Al-Hommoud and Owens and Walton and Underwood and Rodriguez, described above, Defendants have retaliated against Standard on the basis of her complaining about violations of the Whistleblower Protection Provisions of the FCA, 31 U.S.C. § 3730(h).

98.     Standard has been damaged by the defendants' wrongful conduct is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory practices unless and until this Court grants relief. As a result of the acts of retaliation, Plaintiff suffered emotional harm and harm to her reputation.

99.     Defendants' acts of retaliation were performed with malice, willfulness, and reckless indifference to Plaintiff's civil rights.

## IX.
## PRAYER FOR RELIEF

100.    WHEREFORE, Plaintiff on her own behalf respectfully requests that this Court enter a judgment:

> (a)     Declaring that the acts and practices complained of herein are in violation of the Whistleblower Protection Provisions of the False Claims Act, 31 U.S.C. § 3730(h).

(b)     Enjoining and permanently restraining these violation of the Whistleblower Protection Provisions of the False Claims Act, 31 U.S.C. § 3730(h).

(c)     Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities.

(d)     Awarding Plaintiff front pay instead of reinstatement, double back pay, interest on back pay, compensation for pain and suffering, reputational damage, special damages, other judicial remedies, including reasonable attorney fees and court costs, relief for current and delinquent property tax payments, all relief necessary to make Plaintiff whole, and all other damages sustained by Standard as a result of Defendants unlawful retaliation in violation of the Whistleblower Protection Provisions of the False Claims Act, 31 U.S.C. § 3730(h), in an amount to be proved at trial.

## IX.
## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action.

Dated: Helotes, Texas
        May 23, 2017

Respectfully submitted,

Harmony K. Standard
19007 Scenic Loop Rd
Helotes, Texas 78023
(210) 238-5103
harmonystandard123@gmail.com

25