UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HARMONY K. STANDARD, | § § | |
| Plaintiff, | § § | |
| v. | § § | SA-17-CA-155-FB (HJB) |
| ADVENTIST HEALTH SYSTEM, METROPLEX HEALTH SYSTEM d/b/a Metroplex Adventist Hospital, Inc., METROPLEX HOSPITAL HUMAN RESOURCES, ROLLINS-BROOK COMMUNITY HOSPITAL, BRENDA COOLEY Individually, Former Human Resources Executive Director for Metroplex Health System, TINA GUSTAMONI Individually, Human Resources Assistant for Metroplex Health System, RAY OWENS Individually, Rehabilitation Director for Metroplex Health Systems, CARLYLE WALTON Individually, President and CEO of Metroplex Health System, and NURSE ASHLEY UNDERWOOD, Administrator of Rollins-Brook Community Hospital, | § § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. (Docket Entry 24.) The Court has referred such matters to me for recommendation. (*See* Docket Entry 3.) For the reasons that follow, I recommend that Defendants' motion be **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff be required to again amend her complaint.

## I. Jurisdiction.

Plaintiff asserts causes of action under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). (*See* Docket Entry 12, at 2.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. I have authority to issue this recommendation pursuant to 28 U.S.C. § 636(b).

## II. Background.

The facts in this section are drawn from the allegations in Plaintiff's *pro se* amended complaint, which, for the purposes of Defendants' motion, must be both "accepted as true," *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010), and liberally construed, *McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995).

Plaintiff was employed by Defendant Metroplex Adventist Hospital, Inc. ("Metroplex") from October 12, 2015, to January 18, 2016. (Docket Entry 12, at 3.) Metroplex offered Plaintiff a position at a hospital in Killeen, Texas, as an inpatient occupational therapist, though apparently she was also required to work at another hospital, the Rollins Brooks Community Hospital ("RBCH") in Lampasas, Texas. (*Id.* at 8, 11.) While working at the RBCH, Plaintiff alleges that she treated a patient who suffered from a stroke and stomach cancer. (*Id.* at 11.) Though not exactly clear, Plaintiff's complaint alleges that the patient was not a good candidate for occupational therapy or hospital care, but should instead have been in hospice. (*Id.* at 11–12.) Plaintiff alleges that Defendants nevertheless kept him in the hospital, apparently in collusion with the patient's spouse, with the goal of seeking Medicare reimbursement for the patient's treatment. (*Id.*)

Plaintiff complained about what she believed to be misuse of Medicare funds to a nurse at the RBCH, who in turn relayed the complaint to the hospital administrator Ashley Underwood. (Docket Entry 12, at 12.) Underwood contacted Metroplex Rehabilitation Director Ray Owens, and

2

complained about Plaintiff's behavior. (*Id.*) Plaintiff repeated her complaint to Owens, stating her belief that the patient was being "exploited for his Medicare benefits by the hospital and [his] wife by [being kept] in the hospital rather than home on hospice." (*Id.* at 13.) According to the Plaintiff's complaint, Owens investigated the matter the next day and learned that the patient's wife had been upset by Plaintiff and that a physician assistant at the hospital believed Plaintiff acted improperly. The patient was then removed from Plaintiff's care. (*Id.*)

It is not clear when the events alleged in the preceding paragraph occurred. However, the complaint alleges that Plaintiff encountered a separate patient safety issue on December 16, 2015, involving a patient feeding himself contrary to medical directives. (Docket Entry 12, at 14.) Plaintiff did not report the issue, but did take a photograph of the hospital communication board to document that the instructions as to the patient's self-feeding was not included. (*Id.*) The nurse manager on duty saw Plaintiff take the photograph and contacted Owens. (*Id.*)

According to Plaintiff, she received a negative performance evaluation the next day, and was placed on a performance improvement plan ("PIP"). (Docket Entry 12, at 14.) The PIP mentioned the interaction with the nurse manager on December 16, 2015, as well as concerns expressed by five other employees during the two months of Plaintiff's employment. Plaintiff denied the allegations, but was nevertheless placed on the PIP, which apparently required her to meet with Owens once a week. (*Id.* at 15.) Plaintiff alleges that Owens was hostile during these meetings. (*Id.* At 6.) Plaintiff requested human resources ("HR") personnel to be present during each meeting; Owens allegedly responded that, if the presence of HR personnel would be required every time he needed to speak to Plaintiff, Plaintiff could not work for Metroplex and would have to resign. (*Id.*)

Plaintiff's amended complaint states that, upon her return to the RBCH on January 13, 2016,

3

Underwood asked her to improperly increase certain Medicare-funded therapy. (Docket Entry 12, at 16.) Plaintiff apparently refused to participate, which led to a meeting with Tammy Rodriguez, Vice President of Patient Services and Chief Nursing Officer for Metroplex. (*Id.* at 7, 17.) Plaintiff was told to return to work at the RBCH and use her therapist license to "pick up and certify patients and bill patient's Medicare for hospital revenue." (*Id.* at 18.) In context, the complaint suggests, that these certifications were, in Plaintiff's view, fraudulent; she states that she believed she was required to act "like a social prostitute." (*Id.*) Plaintiff refused to return to RBCH under those conditions, and she was terminated. (*Id.* at 18.)

Plaintiff's amended complaint sets out four causes of action against Defendants. Three causes of action appear to be identical in substance; they allege that Defendants discriminated against Plaintiff on the basis of her "refusal to engage in Medicare schemes and lawful acts of protected activity in violation of the Whistleblower Protection Provisions of the FCA, 31 U.S.C. § 3730(h)." (Docket Entry 22.)[1] The fourth cause of action adds that Defendants also retaliated against Plaintiff for complaining of violations of the whistleblower protections of the FCA. (*Id.* at 24.) Plaintiff seeks declaratory and injunctive relief, damages, attorney's fees and costs. (*Id.* at 24–25.)

Defendants' have moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted, under Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 24.) Plaintiff responded in opposition to the motion, and alternatively sought leave to amend her complaint again in response to the motion. (*See* Docket Entry 33, at 19.)

---

[1] The causes of action also alleged discrimination based on "religious ethical beliefs" (*id.*); however, with the exception of a question concerning religion during Plaintiff's orientation, the complaint does not appear to set out any facts regarding religious discrimination. The most it indicates is that Plaintiff told Owens that she felt "this Christian (Seventh-day Adventist) hospital should not have been engaging in less than ethical activities." (Docket Entry 12, at 13.)

4

## III. Applicable Legal Standards.

Federal Rule of Civil Procedure 12 authorizes dismissal of a cause of action in a complaint when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted." *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 793 (N.D. Tex. 2014) (citing *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)). Additionally, "[i]t is well-established that '*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.'" *Shaunfield*, 991 F. Supp. 2d at 793 (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, the pleadings must show specific, well-pleaded facts, not mere conclusory allegations, in order to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The Court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

For most claims, Rule 8(a) requires that the pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While a complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, " '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' do not establish facial plausibility," *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility exists when sufficient facts in the complaint "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Certain claims must meet supplemental pleading requirements under Rule 9(b). *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) ("Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading."). Rule 9(b) requires that, in alleging fraud or mistake, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). With regard to claims of fraud, the supplemental requirements of Rule 9(b) are warranted by the "great harm to the reputation of a business firm or other enterprise" a fraud claim can inflict. *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). "[T]he heightened pleading standard provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

To meet the higher standard of Rule 9(b), a plaintiff must "set forth the who, what, when, where, and how of the alleged fraud." *Spicer*, 751 F.3d at 365 (quoting *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010)) (internal quotation marks omitted). A

plaintiff must include the "'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman*, 14 F.3d at 1068). The plaintiff "cannot rely on speculation or conclusional allegations" to fulfill Rule 9(b)'s particularity requirement. *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir. 2008).

IV. **Analysis.**

Defendants make four sets of arguments in their motion to dismiss. The first three sets of arguments concern the appropriate Defendant in this case: Defendants argue that the only proper Defendant under the FCA is Plaintiff's former employer Metroplex, and that the other Defendants are either not legal entities, assumed business names of Metroplex not subject to separate suit, or individuals who, because they are not employers, cannot be sued under the FCA. (Docket Entry 24, at 15–18.) Defendants' fourth set of arguments concern the sufficiency of Plaintiff's factual allegations: they argue that Plaintiff has failed to state a claim for whistleblower retaliation under the FCA. (*Id.* at 18–24.)

This Report and Recommendation first considers the arguments as to the appropriate Defendant in this case, and then considers the arguments as to whether Plaintiff has stated a claim for relief. Finally, it considers whether Plaintiff should be required to amend her complaint.

A. *The Appropriate Defendant in this Case.*

Defendants argue that Defendant Metroplex is the only proper Defendant in this case. Of the other Defendants Plaintiff has sued, Defendants argue that "Metroplex Health System-HR" is not a separate legal entity, and that Defendants "Metroplex Health System," Metroplex Hospital," and

7

RBCH are merely assumed business names. (Docket Entry 24, at 15–16.) Additionally, they argue that all the Defendants besides Metroplex are not subject to suit under 31 U.S.C. § 3730(h), because the statute provides whistleblower-retaliation liability for only the employer. (*Id.* at 17.) Defendants cite *Howell v. Town of Ball*, 827 F.3d 515, 529–30 (5th Cir. 2016), an FCA retaliation case in which the court of appeals affirmed dismissal of all defendants except the employer on this basis.

Defendants' arguments as to the proper defendant in a § 3730(h) are well-taken. Plaintiff provides no proper legal basis upon which to hold entities other than her former employer Metroplex directly accountable under the statute. (*See* Docket Entry 33 at 18–19.) Accordingly, Defendants' motion should be granted on this issue and Plaintiff's case should be allowed to proceed against only Defendant Metroplex.

### B. *Whether Plaintiff Has Stated a Claim for Relief.*

Defendants argue that "Plaintiff's First Amended Complaint does not contain sufficient well-pleaded factual allegations to plausibly support a claim for relief under § 3730(h)." (Docket Entry 24, at 18.) This argument requires the Court to determine the elements of a claim for relief under state statute. This Report and Recommendation first addresses that issue, and then turns to Defendants' arguments for dismissal.

#### 1. *The elements of a retaliation claim under § 3730(h).*

Defendants argue that, to state an FCA retaliation claim, Plaintiff is required to plead that "(1) she was engaged in protected activity in furtherance of an FCA action or efforts to stop an FCA violation, (2) Metroplex knew that she engaged in protected activity, and (3) Metroplex discharged her because of the protected activity." (Docket Entry 24, at 18 (citing, *inter alia*, *Robertson v. Bell Helicopter Textron, Inc.* 32 F.3d 948, 951 (5th Cir. 1994)). Although Defendants correctly state the

elements of a retaliatory discharge claim under the FCA, neither the statute nor Plaintiff's complaint is limited to a claim of discharge. The statute provides a cause of action not only to a discharged employee, but also to an employee who is "demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee" in furtherance of the FCA. 31 U.S.C. § 3730(h)(1). Plaintiff's causes of action likewise do not limit her claims to discharge only. (Docket Entry 12, at 21–24.) Accordingly, the Court must consider elements of a cause of action that are broader than Defendants suggest.

In *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 175 & n.3 (5th Cir. 2016), the Fifth Circuit cited with approval cases from a number of circuits which have applied the *McDonnell Douglas* framework[2] to § 3730(h) retaliation claims.[3] These cases broadly outline the requirements of a § 3730(h) claim in substantially similar terms. The plaintiff must show (1) she engaged in "protected conduct," (i.e., acts done in furtherance of an action under § 3730) and (2) that she was discriminated against because of this "protected conduct." *Hutchins*, 253 F.3d at 186; *see also United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998) (same) (citation omitted). "In proving that [s]he was discriminated against 'because of' conduct in furtherance of a False Claims Act suit, a plaintiff must show that (1) [her] employer had knowledge [s]he was engaged in 'protected conduct'; and (2) that [her] employer's retaliation was motivated, at least in part, by the employee's engaging in 'protected conduct.' " *Hutchins*, 253 F.3d at 186 (bracketed

---

[2] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[3] *See United States ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1240–41 (D.C. Cir. 2012); *Harrington v. Aggregate Indus. Ne. Region, Inc.*, 668 F.3d 25, 31 (1st Cir. 2012); *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 346 (6th Cir. 2007); *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001); *Norbeck v. Basin Elec. Power Co-op.*, 215 F.3d 848, 850–51 (8th Cir. 2000).

material added, citations omitted). "In terms of § 3730(h), an employee can be acting 'in furtherance of an action under this section'—can be engaging in protected activity—although the employee is not contemplating bringing a *qui tam* suit, is not even aware that there is such a thing as a *qui tam* action, and has no idea whether [her] investigation or other acts, if made known to the government, might cause the Attorney General to sue [her] employer under the False Claims Act." *Schweizer*, 677 F.3d at 1238 (bracketed material added). Similarly, "the employer may incur liability under § 3730(h) even if the employer has no inkling that a False Claims Act suit may be in the offing." *Id.*

2. *Defendants' arguments for dismissal.*

With the elements established, this Report and Recommendation now turns to the arguments made by Defendants in support of dismissal. Defendants argue that Plaintiff has failed to allege sufficiently that she engaged in protected activity (Docket Entry 24, at 18–20); that she fails to allege any knowledge of her activity on the part of Defendants (*id.* at 22–23); and that she fails to allege she was discharged as a result of the protected activity (*id.* at 24–25.) Construing Plaintiff's complaint liberally, and accepting its allegations as true, the Court should reject each of these arguments, at least in part.

Protected activity. Defendants argue that, to make out an FCA retaliation claim, the alleged "protected activity" must be aimed at matters that reasonably could lead to a viable claim under the Act. (Docket Entry 24, at 18–19 (citing cases)). They contend that an employee's complaint must specifically allege fraudulent billing of claims, rather than merely address misconduct. (*Id.* at 19.)

Defendants' contentions are essentially correct. An allegation of protected activity will not stand when the plaintiff "never characterized [her] concerns as involving illegal, unlawful, or false-claims investigations." As noted above, however, this does not mean that the plaintiff must

10

know about *qui tam* actions, or know that her complaints, if presented to the government, would cause the Attorney General to sue her employer. *Schweizer*, 677 F.3d at 1238. Nevertheless, her complaints must concern matters within the scope of the FCA, not other illegal or unethical conduct.

Measured by these standards, Plaintiff's complaint is sufficient. It is clear that submitting false claims for Medicare reimbursement qualifies as a violation of the FCA; indeed, it can qualify as criminal fraud. *See United States v. Mahmood*, 820 F.3d 177, 185–87 (5th Cir. 2016) (criminal violation); *United States v. Mahmood*, No. 6:15-CV-948, 2016 WL 5369562 (E.D. Tex. Sept. 9, 2016) (FCA violation on same facts). Plaintiff states in her complaint that she specifically complained about the misuse of Medicare funds to keep a patient in the hospital, receiving unnecessary occupational therapy, rather than at home or in hospice. (Docket Entry 12, at 12–13.) Moreover, when Plaintiff made her complaint, she referred to a previous FCA action that she said the Government had instituted against Metroplex. (*Id.*) Plaintiff originally made this complaint to a nurse where she was working, but the next day she made the same complaint to Owens, whom she claims was the Rehabilitation Director and whom she alleges conducted an investigation into the claim. (*Id.* at 13.) Later she alleges that she again complained that she was asked to "use her therapy license to pick up and certify patients and bill patient's Medicare for hospital revenue." (*Id.* at 18.) As noted above, it is clear from context that Plaintiff believed such certifications to be fraudulent. Plaintiff's alleged complaints, construed liberally, concern matters within the scope of the FCA, and thus, if taken as true, meet the standard of "protected activity."

In two respects, however, Plaintiff's complaints of protected activity fail. First, on a number of occasions Plaintiff's complaint raises issue of patient safety, or unethical actions on Defendants' part. Such allegations, while serious, do not themselves assert protected activity under the FCA. *Cf.*

*U.S. ex rel. Patton v. Shaw Servcs., L.L.C.*, 418 F. App'x 366, 372 (5th Cir. 2011) (complaints concerning unsafe or improper construction methods not sufficient to constitute protected activity). Second, Plaintiff's fourth cause of action attempts to state a claim of retaliation for invoking the FCA whistleblower protection, rather than for asserting that Defendants engaged in Medicare fraud or false claims. (*See* Docket Entry 12, at 24.) Such a complaint does not itself allege fraud or a false claim, so it is not clear that it is "protected activity" under the statute. Even if it is, Plaintiff's amended complaint alleges such a claim in no more than conclusory language. Accordingly, the fourth cause of action should be dismissed.

Knowledge. Defendants argue that, to allege the requisite knowledge on the part of the employer, it is insufficient for the employee to allege the employer knew of her claim of fraud; instead, the employer had to have notice of the "distinct possibility of a *qui tam* action." (Docket Entry 24, at 22 (citing *U.S. ex rel. Gonzales v. Fresenius Med Care N. Am.*, 748 F. Supp. 2d 95, 104 (W.D. Tex. 2010)). Defendants claim that Plaintiff's allegations do not meet this requirement. (Docket Entry 23, at 22–23.)

Defendants overstate the requisite knowledge that need be alleged. As the District of Columbia Circuit states in *Schweizer*, "the employer may incur liability under § 3730(h) even if the employer has no inkling that a False Claims Act suit may be in the offing." 677 F.3d at 1238. Fifth Circuit case law is not in conflict—indeed, in *Robertson*, a case on which Defendants (and the District Court in *Gonzales*) rely, the Court recognized that a retaliation claim could be raised by an employee who "did not file *qui tam* actions, but . . . did express concerns about possible fraud to their employers." 32 F.3d at 951. The plaintiff in *Robertson*, by contrast, "never characterized his concerns as involving illegal, unlawful, or false-claims investigations." *Id.* at 952. "The record

contains no evidence that Robertson expressed any concerns to his superiors other than those typically raised as part of [his] job" as a contract administrator. *Id.*

Here, Plaintiff alleges that she did express concerns about Medicare fraud to her superiors. (Docket 12, at 12–13, 18.) Moreover, she was not a contract administrator like the plaintiff in *Robertson*, but an occupational therapist; stating concerns regarding fraudulent Medicare claims would not be considered part of her job. For these reasons, Plaintiff's *pro se* amended complaint, liberally construed, is sufficient to allege the requisite knowledge.

Retaliation. Finally, Defendants claim that Plaintiff "has completely failed" to allege that she was discharged as a result of her protected activity. (Docket Entry 24, at 24.) As noted above, however, FCA retaliation claims are not limited to discharge claims; the statute also protects employees who are "demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment." 31 U.S.C. § 3730(h).

Defendants note that Plaintiff appears to allege that she was terminated not for her protected activity of alleging Medicare fraud, but for failing to report to work at RBCH. (Docket Entry 24, at 25.) Construed liberally, however, Plaintiff's complaint connects the two issues: she apparently believed that she was ordered to return to the hospital to improperly certify patients for hospital placement, with expenses to be reimbursed by Medicare. Taken as true, and construed liberally, these allegations are sufficient to connect the discharge with her protected activity.

Even if the discharge is not alleged to be sufficiently retaliatory, Plaintiff alleges other incidents of retaliation. She states that, before her termination, she was placed on a performance improvement plan ("PIP"), treated differently in respect to performance reviews, and was harassed

during weekly performance reviews by her supervisor Owens. (Docket Entry 12, at 14–16.) These allegations are sufficient to allege retaliation under the statute.

### C. *Whether Plaintiff Should Be Required to Amend Her Complaint.*

Plaintiff argues that, should her complaint be found to be defective, she should be granted leave to amend to attempt to cure the deficiencies. (*See* Docket Entry 33, at 19–20.) It is well-settled that, before dismissing a *pro se* complaint, the Courts should generally provide the litigant with an opportunity to amend. See *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). In this case, although Plaintiff's complaint meets the minimal standards to state a claim for relief, amendment is nevertheless appropriate, based on a number of Defendants' arguments.

First, Defendants correctly argue that, to the extent Plaintiff intends to present a *qui tam* action in paragraphs 35 to 50 of the amended complaint by directly alleging that Defendants made a false claim under the FCA, she fails to meet the heightened requirements of Federal Rule of Civil Procedure 9(b). (Docket Entry 24, at 20–22.) It does not appear that Plaintiff actually intends to bring a *qui tam* action; rather Plaintiff's causes of action all concern retaliation. As Defendants note, § 3730(h) "is the only statutory cite within [the] causes of action, and is clearly the thrust of Plaintiff's First Amended Complaint." (Docket Entry 24, at 17.) Nevertheless, Plaintiff's complaint should be amended to clarify that no *qui tam* action is intended, or alternatively to meet the requirements of Rule 9(b) in stating such a claim.

Defendants also correctly assert that Plaintiff's four "causes of action" are duplicative. (Docket Entry 24, at 17.) And they are correct that some of Plaintiff's complaints concern safety, regulatory, or ethical violations, rather than alleged false claims or fraud on the Medicare system. Finally, as noted above, Plaintiff's fourth cause of action fails to state a claim for relief, and her

allegations against multiple Defendants are invalid as only the employer faces liability under § 3730(h). Plaintiff should be required to amend her complaint to address these deficiencies by alleging a single retaliation claim under § 3730(h) against a single Defendant, Metroplex. Plaintiff should further confine her allegations to her questions of retaliation for raising issues of fraud or false claims concerning government payments.

V. **Conclusion and Recommendation.**

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docket Entry 24) be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's fourth cause of action, and all of her claims against Defendants other than Metroplex, should be **DISMISSED**, and Plaintiff should be required to again amend her complaint to raise a single retaliation claim based on protected activity of alleging Medicare fraud and false claims.

VI. **Instructions for Service and Notice for Right to Object.**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.

Written objections to this report and recommendation must be filed **within fourteen (14) days after being served** with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general

objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a de novo determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on January 3, 2018.

Henry J. Bemporad
United States Magistrate Judge